1

MICHAELSON, SUSI & MICHAELSON

(SPACE BELOW FOR FILING STAMP ONLY)

A Professional Corporation

2

ATTORNEYS AT LAW

SEVEN WEST FIGUEROA STREET, SECOND FLOOR

3

SANTA BARBARA, CALIFORNIA 93101-3191

Telephone: (805) 965-1011

4

Facsimile: (805) 965-7351

Peter Susi, Bar No. 62957

5

6

Attorneys for Debtors and Debtors-in-Possession

7

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

10

11

In re                                    )   BK No. 9:09-bk-12311-RR
                                         )
12

HOLLYWOOD MOTION PICTURE AND             )   Chapter 11
TELEVISION MUSEUM, a                     )
13

California Non-Profit                    )   Jointly Administered with:
Corporation,                             )   Case No: 9:10-bk-10865-RR
                                         )
14

                                         )
SELDEN ENTERPRISES LIMITED               )
15

PARTNERSHIP,                             )
                                         )
                                         )   DECLARATION OF TODD FISHER IN
16

            Debtors.                     )   SUPPORT OF DEBTORS' PLANS
                                         )
17

————————————————————                     )
                                         )
18

[x] Affects both Debtors                 )
                                         )   Date:      September 8, 2010
19

[ ] Applies only to Hollywood            )   Time:      10:00 a.m.
Motion Picture and Television            )   Place:     1415 State Street
20

Museum                                   )              Courtroom 201
                                         )              Santa Barbara, CA
21

[ ] Applies only to Selden               )
Enterprises Limited                      )
22

Partnership                              )
                                         )
23

                                         )
                                         )
24

                                         )
                                         )
25

                                         )
                                         )
26

                                         )
                                         )

27

28

1 | I, Todd Fisher, declare:

2 | 1.   I am the president of debtor and debtor-in-possession

3 |      Hollywood Motion Picture Museum (the "Museum") and am the

4 |      responsible corporate officer of Selden Enterprises

5 |      Limited Partnership ("Selden").

6 | 2.   Attached hereto as Exhibit "A" is a true and correct copy

7 |      of the Promissory Note dated September 4, 2002.

8 | 3.   Attached hereto as Exhibit "B" is a true and correct copy

9 |      of the Amended and Restated Promissory Note dated March

10 |      18, 2003.

11 | 4.   Attached hereto as Exhibit "C" is a true and correct copy

12 |      of the Security Agreement signed by Hollywood Motion

13 |      Picture Trust dated March 18, 2003.

14 | 5.   Attached hereto as Exhibit "D" is a true and correct copy

15 |      of the Forebearance Agreement May 1, 2005.

16 | 6.   As part of any museum project, the Museum and Selden will

17 |      post a deposit sufficient to pay all non-insider claims in

18 |      full at confirmation, thus eliminating the need to make

19 |      royalty payments to the general unsecured creditors

20 |      following confirmation.

21 |

22 |      I declare under penalty of perjury that the foregoing is

23 | true and correct.

24 |      Executed this 30 day of August, 2010, at Santa Monica,

25 | California.

26 |

27 |      _____

28 |      Todd Fisher

Exhibit ___A___

PROMISSORY NOTE

$1,100,000.00                                                    September 4, 2002

   FOR VALUE RECEIVED, the undersigned, HOLLYWOOD MOTION PICTURE AND
TELEVISION MUSEUM, a California not-for-profit corporation (the "Debtor"), promises to
pay to the order of GREGORY J. ORMAN (the "Secured Party"), at 12707 Cedar Street,
Leawood, Kansas 66209, or at such other place as the holder of this Note may from time to time
in writing direct, the principal sum of ONE MILLION ONE HUNDRED THOUSAND AND
NO/100 DOLLARS ($1,100,000.00), together with interest on the unpaid principal balance of
this Note at a rate per annum equal to ten percent (10%). The entire unpaid principal balance of
this Note plus all accrued and unpaid interest thereon shall be due and payable on February 28,
2003 (the "Maturity Date"); provided, however, that so long as no Event of Default (as defined
below) exists and is continuing, Debtor may extend the Maturity Date to August 30, 2003 by: (i)
providing written notice of extension to Secured Party on or before January 31, 2003, and (ii)
payment of the Extension Fee (as defined below), and upon such extension, the unpaid principal
balance of this Note plus all accrued but unpaid interest shall be due and payable on August 30,
2003 (the "Extended Maturity Date").

   Interest shall be calculated on the basis of a 365-day year and the actual number of days
elapsed. If any Event of Default shall have occurred and be continuing, Debtor shall pay interest
on the outstanding unpaid principal and interest balance of this Note at a rate per annum equal to
eighteen percent (18%) (the "Default Rate") until such time as said Event of Default has been
cured. In no event shall the rate of interest exceed the maximum rate permitted by applicable
law.

   Contemporaneously with the execution of this Note, Debtor shall pay to Secured Party a
non-refundable origination fee of $100,000.00, which will be deemed fully earned upon
payment. Debtor authorizes Secured Party to withhold the amount of this fee from the loan
proceeds. If Debtor exercises the option to extend the term of this Note from the Maturity Date
to the Extended Maturity Date, as a condition precedent to the effectiveness of such extension,
Debtor shall pay to Secured Party a non-refundable extension fee (the "Extension Fee") in the
amount of $100,000.00, which will be deemed fully earned upon payment.

   This Note may be prepaid, in whole or in part, at any time and from time to time without
premium or penalty; provided, however, that no prepayment will relieve Debtor of its obligations
under the Royalty Agreement of even date herewith between Debtor and Secured Party.

   Payment of this Note is secured by the Collateral as that term is defined in the Security
Agreement of even date herewith from Debtor in favor of Secured Party (the "Security
Agreement"). The cancellation or surrender of this Note, upon payment or otherwise, shall not
affect the right of Secured Party to retain the Collateral for any other liabilities of Debtor to
Secured Party.

CCMDOCS 464123v5

EXHIBIT "_A_"

Upon the occurrence of any Event of Default (as defined in the following sentence), Secured Party may, at Secured Party's option: (i) have all principal, interest and charges outstanding or owing hereunder bear interest, until paid in full, at the Default Rate; and (ii) declare all sums outstanding or owing hereunder, including principal, interest, fees, charges, expenses and other costs to be immediately due and payable without presentment, demand or notice of any kind, all of which are expressly waived. For purposes of this Agreement, the term "Event of Default" shall mean the occurrence of any of the following events:

1.  Debtor's failure to pay when due any principal or interest on this Note or any costs, fees, reimbursable expenses or other amounts payable by Debtor under this Note or the Security Agreement;

2.  The failure of Debtor to perform any other duty or obligation of Debtor contained in this Note or the Security Agreement;

3.  Debtor's breach of any representation or warranty contained in this Note or the Security Agreement;

4.  Debtor makes an assignment for the benefit of creditors;

5.  Debtor is the subject of any voluntary or involuntary case commenced under the Federal Bankruptcy Code, as now constituted or hereafter amended, or is the subject of any similar proceeding under other applicable law regarding bankruptcy, insolvency, reorganization, adjustment of debt or other forms of relief for debtors;

6.  Debtor consents to the appointment of a receiver, trustee or similar official for the Collateral or for all or substantially all of its property or permits a decree ordering such appointment to remain in effect and unstayed for sixty (60) days;

7.  Debtor is the subject of any dissolution or liquidation proceeding or Debtor ceases active business operations;

8.  Debtor has issued against it a writ of attachment, execution or other legal process involving an amount in excess of $10,000.00 or involving the Collateral;

9.  Any casualty loss occurs with respect to the Collateral which is not fully covered by insurance;

10.  Any conversion, diversion or misappropriation of any of the Collateral occurs;

11.  The failure of Debtor to perform any duty or obligation owed to Secured Party under the Royalty Agreement of even date herewith between Debtor and Secured Party (the "Royalty Agreement"); or

2

CCMDOCS 464123v5

12.    Debtor contests the validity or enforceability of this Note, the Security Agreement or the Royalty Agreement, or the priority of Secured Party's security interest created under the Security Agreement.

Debtor agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce Secured Party's rights hereunder or under the Security Agreement, Debtor shall, to the extent permitted by applicable law, pay to Secured Party its reasonable attorneys' fees and all court costs and other expenses incurred by Secured Party in connection therewith.

The makers, endorsers, guarantors, sureties and all other parties liable for the payment of any sums due or to become due under the terms of this Note severally waive presentment, demand for payment, protest and notice of dishonor, and consent that the time of payment of this Note may be extended from time to time without notice to them. No delay or omission by Secured Party to exercise any right, remedy, privilege or power hereunder or under the Security Agreement shall impair such right, remedy, privilege or power or be construed to be a waiver of any default or acquiescence therein, and any single or partial exercise of any such right, remedy, privilege or power shall not preclude other or future exercise thereof or the exercise of any other right, remedy, privilege or power, and no waiver whatsoever shall be valid unless in writing signed by Secured Party, and then only to the extent in such writing specifically set forth. All remedies herein or by law afforded shall be cumulative and not alternative, and all shall be available to Secured Party until this Note has been paid in full.

This Note is given by Debtor and accepted by the holder hereof pursuant to a lending transaction consummated and to be performed in Johnson County, Kansas. This Note is to be construed and enforced according to the laws of the State of Kansas.

DEBTOR AND SECURED PARTY AGREE THAT ANY ACTION OR PROCEEDING TO ENFORCE, OR ARISING OUT OF, THIS NOTE SHALL BE COMMENCED IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, DEBTOR WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT A SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE PROPERLY SERVED AND SHALL CONFER PERSONAL JURISDICTION IF SERVED BY REGISTERED OR CERTIFIED MAIL TO DEBTOR, OR IS OTHERWISE PROVIDED BY THE LAWS OF THE STATE OF KANSAS OR THE UNITED STATES.

DEBTOR AND SECURED PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY DEBTOR OR SECURED PARTY MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS RELATED HERETO. DEBTOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF SECURED PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SECURED PARTY WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER. DEBTOR ACKNOWLEDGES THAT SECURED

3

CCMDOCS 464123v5

SCAN DATE 2008/07/30 16:18

PARTY HAS BEEN INDUCED TO ACCEPT THIS NOTE BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.

The party executing this Note on behalf of Debtor represents that he/she is a duly elected officer of Debtor and has the power and authority to execute this Note on behalf of Debtor.

HOLLYWOOD MOTION PICTURE
AND TELEVISION MUSEUM

By: _____

Todd Fisher, President

CCMDOCS 464123v5

4

16

21

## AMENDED AND RESTATED
## PROMISSORY NOTE

$2,373,764.00

March 18, 2003

FOR VALUE RECEIVED, the undersigned, HOLLYWOOD MOTION PICTURE AND TELEVISION MUSEUM, a California not-for-profit corporation (the "Debtor"), promises to pay to the order of GREGORY J. ORMAN (the "Secured Party"), at 12707 Cedar Street, Leawood, Kansas 66209, or at such other place as the holder of this Note may from time to time in writing direct, the principal sum of ONE MILLION NINE HUNDRED SEVENTY-THREE THOUSAND SEVEN HUNDRED SIXTY-FOUR AND NO/100 DOLLARS ($1,973,764.00) or, if the Additional Advance (as defined below) is made, the principal sum of TWO MILLION THREE HUNDRED SEVENTY-THREE THOUSAND SEVEN HUNDRED SIXTY-FOUR AND NO/100 DOLLARS ($2,373,764.00), together with interest on the unpaid principal balance of this Note at a rate per annum equal to ten percent (10%). The entire unpaid principal balance of this Note plus all accrued and unpaid interest thereon shall be due and payable on September 15, 2003 (the "Maturity Date").

Interest shall be calculated on the basis of a 365-day year and the actual number of days elapsed. If any Event of Default (as defined herein) shall have occurred and be continuing, Debtor shall pay interest on the outstanding unpaid principal and interest balance of this Note at a rate per annum equal to eighteen percent (18%) (the "Default Rate") until such time as said Event of Default has been cured.

Notwithstanding anything to the contrary contained in this Note, the interest paid or agreed to be paid under this Note shall not exceed the maximum rate of non-usurious interest permitted by applicable law (the "Maximum Rate"). If Secured Party shall receive interest in an amount that exceeds the Maximum Rate, the excess interest shall be applied to the principal balance of this Note or, if it exceeds such unpaid principal, refunded to Debtor. In determining whether the interest contracted for, charged or received by Secured Party exceeds the Maximum Rate, Secured Party may, to the extent permitted by applicable law: (a) characterize any payment that is not principal as an expense, fee or premium rather than interest, (b) exclude voluntary prepayments and the effect thereof, and (c) amortize, prorate, allocate and spread in equal or unequal parts the total amount of interest throughout the contemplated term of this Note.

Secured Party and Debtor agree that $400,000.00 of the principal balance of this Note will not be advanced by Secured Party to Debtor until the following conditions precedent are satisfied (the "Additional Advance"): (a) Debtor shall have delivered to Secured Party a letter in form satisfactory to Secured Party from a nationally recognized municipal bond underwriter that is a registered broker-dealer (the "Underwriter") stating that the Underwriter is highly confident that it can successfully underwrite and sell municipal bonds in the aggregate amount of $14,500,000.00 to finance Debtor's Hollywood Motion Picture and Television Museum project (the "Bonds"), (b) a preliminary official statement authorizing issuance of the Bonds has been delivered to Secured Party and is in form acceptable to Secured Party, and (c) no Event of Default shall exist and be continuing under this Note.

CCMDOCS 518021v6

EXHIBIT "B"

Contemporaneously with the execution of this Note, Debtor shall pay to Secured Party: (a) a non-refundable origination fee of $100,000.00, and (b) the Extension Fee (as defined in the Prior Note (as hereinafter defined)) in the amount of $100,000.00, each of which will be deemed fully earned upon payment. Debtor authorizes Secured Party to withhold the amount of these fees from the loan proceeds.

This Note may be prepaid, in whole or in part, at any time and from time to time without premium or penalty; provided, however, that no prepayment will relieve Debtor of its obligations under the Royalty Agreement dated September 4, 2002 between Debtor and Secured Party (the "Royalty Agreement"). Debtor agrees that the Royalty Agreement remains binding and enforceable against Debtor in accordance with its terms.

Payment of this Note is secured by: (a) an Amended and Restated Security Agreement of even date herewith from Debtor in favor of Secured Party and the collateral described therein (the "Security Agreement"), (b) a Security Agreement of even date herewith from Hollywood Motion Picture Trust in favor of Secured Party and the collateral described therein, and (c) a Security Agreement of even date herewith from Selden Enterprises Limited Partnership, a Nevada limited partnership, in favor of Secured Party and the collateral described therein. This Note, the Security Agreement, the Royalty Agreement, and the other security agreements described above are hereinafter referred to collectively as the "Loan Documents." The collateral described in the Security Agreement and the security agreements described in subsections (ii) and (iii) above is hereinafter referred to collectively as the "Collateral."

Upon the occurrence of any Event of Default (as defined in the following sentence), Secured Party may, at Secured Party's option: (i) have all principal, interest and charges outstanding or owing hereunder bear interest, until paid in full, at the Default Rate; and (ii) declare all sums outstanding or owing hereunder, including principal, interest, fees, charges, expenses and other costs to be immediately due and payable without presentment, demand or notice of any kind, all of which are expressly waived. For purposes of this Agreement, the term "Event of Default" shall mean the occurrence of any of the following events:

1.  Debtor's failure to pay when due any principal or interest on this Note or any costs, fees, reimbursable expenses or other amounts payable by Debtor under this Note or the Security Agreement;

2.  The failure of Debtor to perform any other duty or obligation of Debtor contained in this Note or the Security Agreement;

3.  Debtor's breach of any representation or warranty contained in this Note or the Security Agreement;

4.  Debtor makes an assignment for the benefit of creditors;

5.  Debtor is the subject of any voluntary or involuntary case commenced under the Federal Bankruptcy Code, as now constituted or hereafter amended, or is the subject of any similar proceeding under other applicable federal or state law regarding bankruptcy, insolvency, reorganization, adjustment of debt or other forms of relief for debtors;

CCMDOCS 518021v6

2

SCAN DATE 2008/07/30 16:19

MAR. 17. 2003  2:05PM    STINSON MORRCK                            NO. 8647   P. 4/40

6.    Debtor consents to the appointment of a receiver, trustee or similar official for the Collateral or for all or substantially all of its property or permits a decree ordering such appointment to remain in effect and unstayed for sixty (60) days;

7.    Debtor is the subject of any dissolution or liquidation proceeding or Debtor ceases active business operations;

8.    Debtor has issued against it a writ of attachment, execution or other legal process involving an amount in excess of $10,000.00 or involving the Collateral;

9.    Any casualty loss occurs with respect to any Collateral which is not fully covered by insurance;

10.   Any conversion, diversion or misappropriation of any of the Collateral occurs;

11.   The failure of Debtor to perform any duty or obligation owed to Secured Party under the Royalty Agreement;

12.   Debtor contests the validity or enforceability of this Note, the Security Agreement or the Royalty Agreement, or the priority of Secured Party's security interest created under the Security Agreement;

13.   HMPT or Selden terminates or attempts to terminate any Loan Document to which HMPT or Selden is a party;

14.   HMPT or Selden contests the validity or enforceability of any Loan Documents to which HMPT or Selden is a party, or the priority of Secured Party's security interest created under any such Loan Document; ·

15.   HMPT or Selden fails to perform any duty or obligation of HMPT or Selden under any Loan Document to which HMPT or Selden is a party;

16.   HMPT or Selden breaches any representation or warranty contained in any Loan Document to which HMPT or Selden is a party; or

17.   Any event or circumstance described in numbered paragraphs 4 through 10 above occurs with respect to any HMPT or Selden or any collateral provided by HMPT or Selden under any Loan Document to which HMPT or Selden is a party.

Debtor represents and warrants to Secured Party that: (a) Secured Party and Debtor, or any of their respective officers, directors, or controlling persons, have a pre-existing personal or business relationship; (b) Debtor, by reason of its own business and financial experience or that of its professional advisors, has the capacity to protect its own interests in connection with the transaction evidenced by this Note, and (c) the proceeds of the loan evidenced by this Note will be used for business purposes and not for personal, family or household purposes.

Debtor agrees that if, and as often as, this Note is placed in the hands of an attorney for collection or to defend or enforce Secured Party's rights hereunder or under any other Loan

3

CCMDOCS 518021v6

SCAN DATE 2009/07/30 16:13

20

72  9

MAR. 17. 2003  2:05PM    STINSON MORRCK                    NO. 8647   P. 5/40

Document, Debtor shall, to the extent permitted by applicable law, pay to Secured Party its reasonable attorneys' fees and all court costs and other expenses incurred by Secured Party in connection therewith.

The makers, endorsers, guarantors, sureties and all other parties liable for the payment of any sums due or to become due under the terms of this Note severally waive presentment, demand for payment, protest and notice of dishonor, and consent that the time of payment of this Note may be extended from time to time without notice to them. No delay or omission by Secured Party to exercise any right, remedy, privilege or power hereunder or under any other Loan Document shall impair such right, remedy, privilege or power or be construed to be a waiver of any default or acquiescence therein, and any single or partial exercise of any such right, remedy, privilege or power shall not preclude other or future exercise thereof or the exercise of any other right, remedy, privilege or power, and no waiver whatsoever shall be valid unless in writing signed by Secured Party, and then only to the extent in such writing specifically set forth. All remedies herein or by law afforded shall be cumulative and not alternative, and all shall be available to Secured Party until this Note has been paid in full.

This Note is given by Debtor and accepted by the holder hereof pursuant to a lending transaction consummated and to be performed in Johnson County, Kansas. This Note is to be construed and enforced according to the laws of the State of Kansas.

DEBTOR AND SECURED PARTY AGREE THAT ANY ACTION OR PROCEEDING TO ENFORCE, OR ARISING OUT OF, THIS NOTE SHALL BE COMMENCED IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, DEBTOR WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT A SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE PROPERLY SERVED AND SHALL CONFER PERSONAL JURISDICTION IF SERVED BY REGISTERED OR CERTIFIED MAIL TO DEBTOR, OR IS OTHERWISE PROVIDED BY THE LAWS OF THE STATE OF KANSAS OR THE UNITED STATES.

DEBTOR AND SECURED PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY DEBTOR OR SECURED PARTY MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS RELATED HERETO. DEBTOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF SECURED PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SECURED PARTY WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER. DEBTOR ACKNOWLEDGES THAT SECURED PARTY HAS BEEN INDUCED TO ACCEPT THIS NOTE BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.

The party executing this Note on behalf of Debtor represents that he/she is a duly elected officer of Debtor and has the power and authority to execute this Note on behalf of Debtor.

4

COMDOCS 518021v6

SCAN DATE 2003/07/30 16:19

MAR. 17 2003  2:06PM    STINSON MORECK                                    NO. 8547    P. 5/40

 

 

 

This Note amends, restates, supersedes and increases that certain Promissory Note dated September 4, 2002 in the principal amount of $1,100,000.00 from Debtor, as maker, payable to the order of Secured Party (the "Prior Note"). Upon Debtor's execution and delivery of this Note and execution and delivery to Secured Party of all other Loan Documents, the Prior Note will be marked "Cancelled" and will be returned to Debtor. Debtor acknowledges that: (a) at the time of execution and delivery of the Prior Note, Debtor had requested that Secured Party provide credit to Debtor in an amount in excess of the principal balance of the Prior Note, but that due to other financial commitments, Secured Party was unable to provide additional credit at that time, and (b) the additional advance provided by Secured Party to Debtor pursuant to this Note and the indebtedness evidenced by the Prior Note constitute a single loan by Secured Party to Debtor.

HOLLYWOOD MOTION PICTURE
AND TELEVISION MUSEUM

By: _____

Todd Fisher, President

CCMDOCS 518021v6                                    5

SCAN DATE 2003/07/30 16:18

MAR. 17. 2003  2:12PM     SON MORECK                                          NO 8547   P. 17/40

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT (the "Agreement"), is made and entered into as of March 18, 2003, between HOLLYWOOD MOTION PICTURE TRUST, a trust formed under the laws of the State of California, whose mailing address is 6514 Lankershim, North Hollywood, California 91606 (the "Debtor"), and GREGORY J. ORMAN, whose mailing address is 9580 Sloane Avenue, Orlando, Florida 32827 (the "Secured Party").

## RECITALS

WHEREAS, contemporaneously with the execution of this Agreement, Secured Party is extending credit to Hollywood Motion Picture and Television Museum, a California not-for-profit corporation (the "Borrower"), pursuant to the terms of an Amended and Restated Promissory Note of even date herewith in the principal amount of $2,373,764.00 from Borrower, as maker, payable to the order of Secured Party (the "Note"); and

WHEREAS, as a condition precedent to Secured Party extending credit to Borrower pursuant to the Note, Secured Party required that Debtor execute and deliver to Secured Party this Agreement.

NOW, THEREFORE, in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Definitions.** The term "State," as used herein, means the State of Kansas. All terms defined in the Uniform Commercial Code of the State and used herein shall have the same definitions herein as specified therein. However, if a term is defined in Article 9 of the Uniform Commercial Code of the State differently than in another Article of the Uniform Commercial Code of the State, the term has the meaning specified in Article 9. The term "Obligations," as used herein, means: (a) all indebtedness, obligations and liabilities of Borrower to Secured Party, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising, including, but not limited to, the indebtedness evidenced by the Note; and (b) all indebtedness, obligations and liabilities of Debtor by Secured Party, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising, including, but not limited to, the indebtedness evidenced by this Agreement. The term "Event of Default," as used herein, shall have the meaning assigned thereto in the Note.

2.    **Grant of Security Interest.** Debtor hereby grants to Secured Party, to secure the payment and performance in full of all of the Obligations, a first priority security interest in and so pledges and assigns to Secured Party the following properties, assets and rights of Debtor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all television and movie memorabilia and collectibles, including, without limitation, the memorabilia listed on Schedule 1 attached hereto.

3.    **Authorization to File Financing Statements.** Debtor hereby irrevocably authorizes Secured Party at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto

EXHIBIT " C "

MAR 17 2003  2:13PM    ISON MOHEER    NO. 8647  P. 18/40

that (a) indicate the Collateral, and (b) provide any other information required by Part 5 of Article 9 of the Uniform Commercial Code of the State, or such other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment, including: (i) whether Debtor is an organization, the type of organization and any organizational identification number issued to Debtor, and (ii) in the case of a financing statement filed as a fixture filing, a sufficient description of the real property to which the Collateral relates. Debtor agrees to furnish any such information to Secured Party promptly upon Secured Party's request. Debtor also ratifies its authorization for Secured Party to have filed in any Uniform Commercial Code jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

4.    Other Actions.  To further the attachment, perfection and priority of, and the ability of Secured Party to enforce, Secured Party's security interest in the Collateral, and without limitation on Debtor's other obligations in this Agreement, Debtor agrees, in each case at Debtor's expense, to take the following actions with respect to the following Collateral:

4.1.    Other Actions as to Any and All Collateral.  Debtor agrees, at the request and option of Secured Party, to take any and all other actions Secured Party may determine to be necessary or useful for the attachment, perfection and priority of, and the ability of Secured Party to enforce, Secured Party's security interest in any and all of the Collateral, including, without limitation, (a) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code, to the extent, if any, that Debtor's signature thereon is required therefor, (b) causing Secured Party's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of Secured Party to enforce, Secured Party's security interest in such Collateral, (c) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of Secured Party to enforce, Secured Party's security interest in such Collateral, (d) obtaining governmental and other third party waivers, consents and approvals in form and substance satisfactory to Secured Party, including, without limitation, any consent of any licensor, lessor or other person obligated on Collateral, (e) obtaining waivers from mortgagees and landlords in form and substance satisfactory to Secured Party, and (f) taking all actions under any earlier versions of the Uniform Commercial Code or under any other law, as reasonably determined by Secured Party to be applicable in any relevant Uniform Commercial Code or other jurisdiction, including any foreign jurisdiction.

5.    Representations and Warranties.  Debtor represents and warrants to Secured Party as follows:

a.    Debtor is a trust formed under the laws of the State of California.

b.    The execution, delivery and performance by Debtor of this Agreement are within Debtor's trust powers, have been duly authorized by all necessary and appropriate trustee and beneficiary action, and are not in contravention of any law or the terms of Debtor's trust agreement or any amendment thereto, or of any indenture, agreement,

2

SCAN DATE 2008/07/30 16:20

Case 9:09-bk-12311-RR   Doc 25-4   Filed 10/07/09   Entered 10/07/09 10:57:09   Desc
Exhibit   Page 5 of 21

MAR. 17. 2003   2:13PM      JSON MONECH                     NO 8647   P. 19/40

undertaking or other documents to which Debtor is a party or by which Debtor or any of Debtor's property is bound or affected. This Agreement has been duly executed by an authorized representative of Debtor.

c.      Debtor is the owner of the Collateral free and clear of all security interests, liens and other encumbrances other than those in favor of Secured Party. Debtor has the unconditional authority to grant the security interest provided herein to Secured Party. Assuming all necessary Uniform Commercial Code filings have been made, Secured Party has an enforceable first priority lien on all of the Collateral.

d.      Debtor is engaged in business operations only at 4124 North Ryan Road, Creston, California 93434 and 6514 Lankershim, North Hollywood, California 91606, and all of the Collateral is and shall remain at said locations for the duration of this Agreement.

e.      There are no actions, suits, proceedings or investigations pending or, to the knowledge of Debtor, threatened against Debtor which, if adversely determined, would, in any case or in the aggregate, materially and adversely affect the property, assets, financial condition or business of Debtor or materially impair the right or ability of Debtor to carry on its operations substantially as conducted on the date of this Agreement.

f.      This Agreement constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy and insolvency laws and laws affecting creditors' rights generally.

g.      No consent, license, approval, or authorization of, or registration, declaration or filing with, any court, governmental body or authority, or other person is required in connection with the valid execution, delivery and performance of this Agreement by Debtor.

h.      Both before and after giving effect to the transaction evidenced by the Note and this Agreement: (i) the fair market value of Debtor's assets exceeds Debtor's debts and liabilities, (ii) Debtor is able to pay its debts as they mature in the normal course of business, and (iii) Debtor is not engaged in or about to engage in any business for which it has unreasonably small capital.

i.      The loan evidenced by the Note does not violate the usury laws of the State of California.

j.      Debtor has delivered to Secured Party a true and complete listing of all movie and television memorabilia owned by Debtor in the form of Schedule 1, all of the movie and television memorabilia identified in such listing is owned by Debtor on the date of this Agreement, and the valuation for each item of movie and television memorabilia shown on such listing is Debtor's good faith estimate of the fair market value of such item of memorabilia on the date of this Agreement based on all facts and circumstances known to Debtor on the date of this Agreement.

3

SCAN DATE 2008/07/30 16:20

MAR. 17. 2003  2:16PM        SUN MUNECA                                    NO. 8647   P. 20/40

k.    Debtor is engaged, in part, in the business of acquiring and collecting movie and television memorabilia for display in a museum/attraction being developed by Borrower. Borrower and Debtor are controlled, directly or indirectly, by the same persons and have a common business purpose of developing the above-described museum/attraction. The proceeds of the loan evidenced by the Note are being used by Borrower to develop the museum/attraction at which the movie and television memorabilia presently owned by Debtor will be displayed. Debtor is receiving reasonably equivalent value for granting the security interest described herein in that the proceeds of the loan evidenced by the Note will be used by Borrower to further the common business purpose of Borrower and Debtor of developing the museum/attraction.

6.    **Covenants Concerning Debtor's Legal Status.** Debtor covenants with Secured Party as follows: (a) without providing at least thirty (30) days' prior written notice to Secured Party, Debtor will not change its name, its place of business or its mailing address or organizational identification number, and (b) Debtor will not change its type of organization, jurisdiction of organization or other legal structure.

7.    **Covenants.** Debtor further covenants with Secured Party as follows: (a) the Collateral, to the extent not delivered to Secured Party, will be kept at Debtor's place of business as shown in Section 5(d) of this Agreement and Debtor will not remove the Collateral from such location, without providing at least thirty (30) days' prior written notice to Secured Party, (b) Debtor shall not sell, dispose of or license the Collateral (or any part thereof) to any person, or offer to do the same, without the prior written consent of Secured Party, and until the Note is paid in full, any proceeds of any such sale, disposition or license made with Secured Party's consent shall be paid to Secured Party and applied to the Obligations, (c) Debtor shall not pledge, mortgage or create, or suffer to exist any right of any person in or claim by any person to the Collateral, or any security interest, lien or encumbrance in the Collateral in favor of any person, other than Secured Party, (d) Debtor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon, (e) Debtor will permit Secured Party, or its designee, to inspect the Collateral at any reasonable time, wherever located, and (f) Debtor shall not merge or consolidate with or into any corporation or entity.

8.    Insurance.

8.1.    **Maintenance of Insurance.** Debtor will maintain with financially sound and reputable insurers insurance with respect to its properties and business against such casualties and contingencies as shall be in accordance with general practices of businesses engaged in similar activities in similar geographic areas. In addition, all such insurance shall be payable to Secured Party as lender loss payee.

8.2.    **Insurance Proceeds.** The proceeds of any casualty insurance in respect of any casualty loss of any of the Collateral shall, subject to the rights, if any, of other parties with an interest having priority in the property covered thereby, (i) so long as no Event of Default has occurred and is continuing and to the extent that the amount of such proceeds is less than $10,000.00, be disbursed to Debtor for direct application by Debtor solely to the repair or replacement of Debtor's property so damaged or destroyed, and (ii) in all other circumstances, be held by Secured Party as cash collateral for the Obligations.

4

SCAN DATE 2003/07/30 16:20

68
94
**15**

MAR 17 2003  2:15PM      RSON MORSE      NO 6647  P. 21/40

8.3.   Continuation of Insurance. All policies of insurance shall provide for at least thirty (30) days' prior written cancellation notice to Secured Party. In the event of failure by Debtor to provide and maintain insurance as herein provided, Secured Party may, at its option, provide such insurance and charge the amount thereof to Debtor. Debtor shall furnish Secured Party with certificates of insurance and policies evidencing compliance with the foregoing insurance provision.

9.   Collateral Protection Expenses; Preservation of Collateral.

9.1.   Expenses Incurred by Secured Party. In Secured Party's discretion, if Debtor fails to do so, Secured Party may discharge taxes and other encumbrances at any time levied or placed on any of the Collateral, maintain any of the Collateral, make repairs thereto and pay any necessary filing fees or insurance premiums. Debtor agrees to reimburse Secured Party on demand for all expenditures so made. Any such expenditure by Secured Party will accrue interest at the Default Rate (as defined in the Note) until paid. Secured Party shall have no obligation to Debtor to make any such expenditures, nor shall the making thereof be construed as the waiver or cure of any Event of Default.

9.2.   Secured Party's Obligations and Duties. Secured Party's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Uniform Commercial Code of the State or otherwise, shall be to deal with such Collateral in the same manner as Secured Party deals with similar property for its own account.

10.   Securities and Deposits. Secured Party may following and during the continuance of an Event of Default demand, sue for, collect, or make any settlement or compromise which it deems desirable with respect to the Collateral. Regardless of the adequacy of Collateral or any other security for the Obligations, any deposits or other sums at any time credited by or due from Secured Party to Debtor may at any time be applied to or set off against any of the Obligations.

11.   Intentionally Omitted.

12.   Power of Attorney.

12.1.   Appointment and Powers of Secured Party. Debtor hereby irrevocably constitutes and appoints Secured Party and any agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of Debtor or in Secured Party's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorneys the power and right, on behalf of Debtor, without notice to or assent by Debtor, to do the following:

a.   upon the occurrence and during the continuance of an Event of Default, generally to sell, transfer, pledge, make any agreement with respect to or otherwise

5

SCAN DATE 2003/07/30 16:20

dispose of or deal with any of the Collateral in such manner as is consistent with the Uniform Commercial Code of the State and as fully and completely as though Secured Party were the absolute owner thereof for all purposes, and to do, at Debtor's expense, at any time, or from time to time, all acts and things which Secured Party deems necessary or useful to protect, preserve or realize upon the Collateral and Secured Party's security interest therein, in order to effect the intent of this Agreement, all at least as fully and effectively as Debtor might do, including, without limitation, the execution, delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral; and

b.      to the extent that Debtor's authorization given in Section 3 is not sufficient, to file such financing statements with respect hereto, with or without Debtor's signature, or a photocopy of this Agreement in substitution for a financing statement, as Secured Party may deem appropriate and to execute in Debtor's name such financing statements and amendments thereto and continuation statements which may require Debtor's signature.

12.2.   **Ratification by Debtor.**  To the extent permitted by law, Debtor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and is irrevocable.

13.     **Rights and Remedies.**

a.      If an Event of Default shall have occurred and be continuing, Secured Party shall have all rights and remedies of a secured party under the Uniform Commercial Code of the State and any additional rights and remedies which may be provided to a secured party in any jurisdiction in which Collateral is located.

b.      Upon the occurrence of an Event of Default, prior to proceeding against the Collateral described on Schedule 1, Secured Party shall send written notice to Debtor of Secured Party's intent to proceed against such Collateral (a "Notice"). Following the giving of the Notice, Debtor shall have a period of ninety (90) days or such longer period as may be agreed to in writing by Debtor and Secured Party (the "Forbearance Period") in which to sell a sufficient amount of such Collateral to pay the Obligations in full; provided, however, that the Forbearance Period will immediately terminate upon the occurrence of any conversion, diversion or misappropriation of any material part of such Collateral. During the Forbearance Period, Debtor shall determine the method, manner, time, place and other terms of sale of such Collateral, but all such terms of sale must be approved in advance by Secured Party, which approval shall not be unreasonably withheld. Any proceeds from the sale of such Collateral during the Forbearance Period will be made payable to Secured Party and be promptly delivered to Secured Party for application to the Obligations.

c.      If, at the end of the Forbearance Period, the Obligations have not been paid in full, Debtor will surrender possession of any remaining Collateral described on Schedule 1 to Secured Party at a location reasonably convenient to Debtor and Secured

6

03/17/03  17:52    ☎   385 6927                          ☒010
Mar 17 03 03:33p      L.W  OFFICES              805-466-9088        p.26
MAR. 17. 2003  2:16PM   STINSON MORICK                   NO 8647   P. 24/40

term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all
other terms hereof shall in no way be affected thereby, and this Agreement shall be construed
and be enforceable as if such invalid, illegal or unenforceable term had not been included herein.
Debtor acknowledges receipt of a copy of this Agreement.

20.  **CONSENT TO JURISDICTION.**  DEBTOR AND SECURED PARTY
AGREE THAT ANY ACTION OR PROCEEDING TO ENFORCE, OR ARISING OUT OF,
THIS AGREEMENT SHALL BE COMMENCED IN THE DISTRICT COURT OF JOHNSON
COUNTY, KANSAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW,
DEBTOR WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT A
SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY
SUCH COURT SHALL BE PROPERLY SERVED AND SHALL CONFER PERSONAL
JURISDICTION IF SERVED BY REGISTERED OR CERTIFIED MAIL TO DEBTOR, OR
AS OTHERWISE PROVIDED BY THE LAWS OF THE STATE OF KANSAS OR THE
UNITED STATES.

21.  **JURY TRIAL WAIVER.**  DEBTOR AND SECURED PARTY HEREBY
KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL
BY JURY DEBTOR OR SECURED PARTY MAY HAVE IN ANY ACTION OR
PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS AGREEMENT
OR THE TRANSACTIONS RELATED THERETO.  DEBTOR REPRESENTS AND
WARRANTS THAT NO REPRESENTATIVE OR AGENT OF SECURED PARTY HAS
REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SECURED PARTY WILL NOT, IN
THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL
WAIVER. DEBTOR ACKNOWLEDGES THAT SECURED PARTY HAS BEEN INDUCED
TO ACCEPT THIS AGREEMENT BY, AMONG OTHER THINGS, THE PROVISIONS OF
THIS PARAGRAPH.

IN WITNESS WHEREOF, intending to be legally bound, Debtor has caused this
Agreement to be duly executed as of the date first above written.

HOLLYWOOD MOTION PICTURE TRUST

By: _____
Name (print): _DEBBIE REYNOLDS_
Title: _____

Accepted:

_____
Gregory J. Orman

8

SCAN DATE 2009-07-30 16:20

term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein. Debtor acknowledges receipt of a copy of this Agreement.

20.    **CONSENT TO JURISDICTION.**    DEBTOR AND SECURED PARTY AGREE THAT ANY ACTION OR PROCEEDING TO ENFORCE, OR ARISING OUT OF, THIS AGREEMENT SHALL BE COMMENCED IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, DEBTOR WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT A SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY SUCH COURT SHALL BE PROPERLY SERVED AND SHALL CONFER PERSONAL JURISDICTION IF SERVED BY REGISTERED OR CERTIFIED MAIL TO DEBTOR, OR AS OTHERWISE PROVIDED BY THE LAWS OF THE STATE OF KANSAS OR THE UNITED STATES.

21.    **JURY TRIAL WAIVER.**    DEBTOR AND SECURED PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY DEBTOR OR SECURED PARTY MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS RELATED THERETO.    DEBTOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF SECURED PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SECURED PARTY WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER. DEBTOR ACKNOWLEDGES THAT SECURED PARTY HAS BEEN INDUCED TO ACCEPT THIS AGREEMENT BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.

IN WITNESS WHEREOF, intending to be legally bound, Debtor has caused this Agreement to be duly executed as of the date first above written.

HOLLYWOOD MOTION PICTURE TRUST

By: _____
Name (print): _____
Title: _____

Accepted:

_____
Gregory J. Orman

8

SCAN DATE 2008/07/30 16:20

MAR. 17 2003  2:17PM    SON MONECK    NO. 8647   P. 25/40

By signing this Agreement in the spaces provided below, the undersigned personally represent and warrant to Secured Party that the representations and warranties of Debtor contained in Section 5.j. of this Agreement are true and correct.

_____

Debbie Reynolds

_____

Todd Fisher

CCMDOCS 518231v5

9

SCAN DATE 2003/07/30 16:20

74

99 20

03/17/03    17:54    °8°    785 692    P.27    @013
Mar 17 03 03:34p    LAW OFFICES    805-46_-9098    P.27
MAR. 17. 2003  2:17PM    STINSON MORECK    NO 8647    P. 25/40

By signing this Agreement in the spaces provided below, the undersigned personally represent and warrant to Secured Party that the representations and warranties of Debtor contained in Section 5.j. of this Agreement are true and correct.

_____
Debbie Raynolds

_____
Todd Fisher

CCNDOCS 518251v5

9

SCAN DATE 2009/07/30 16:20

May 25 07 10:18a     On Dem   d Tech         91343830                    p.1

## FORBEARANCE AGREEMENT

This Forbearance Agreement (the "Agreement") is made and entered into as of this 1st day of May, 2005, by and among Hollywood Motion Picture and Television Museum, a California not-for-profit corporation (the "Borrower"), Hollywood Motion Picture Trust, a trust formed under the laws of the State of California (the "Trust"), and Selden Enterprises Limited Partnership, a Nevada limited partnership ("Selden", and together with Borrower and Trust, collectively the "Loan Parties"), and Gregory J. Orman (the "Lender").

## RECITALS

A.     Borrower executed and delivered to Lender an Amended and Restated Promissory Note dated March 18, 2003 in the principal amount of $2,373,764.00, payable as to principal and interest as set forth therein (the "Note")

B.     In order to secure payment of the Note: (i) Borrower executed and delivered to Lender an Amended and Restated Security Agreement dated March 18, 2003 pursuant to which Borrower granted to Lender a security interest in the collateral described therein; (ii) the Trust executed and delivered to Lender a Security Agreement dated March 18, 2003 pursuant to which the Trust granted to Lender a security interest in the collateral described therein; and (iii) Selden executed and delivered to Lender a Security Agreement dated March 18, 2003 pursuant to which Selden granted to Lender a security interest in the collateral described therein (collectively, the "Security Documents").

C.     An Event of Default (as defined in the Note) exists and is continuing due to the fact that the Note matured on September 15, 2003 and remains outstanding and unpaid (the "Designated Default").

D     As of April 15, 2005, there is $2,020,000.00 in principal and $907,603 in interest (which includes interest on principal at the rate of 30% per annum from September 16, 2003 through and including April 15, 2005 as agreed to by Borrower in Section 3(c) of this Agreement) due and payable under the Note and all such principal and interest is now due and owing.

E.     By reason of the Designated Default, Lender is entitled to exercise all of its rights and remedies under the Note, the Security Documents and applicable law.

F.     Borrower has requested that Lender forbear for a period of time in exercising its rights and remedies under the Note and the Security Documents, and Lender has agreed to do so provided the Loan Parties enter into this Agreement.

In consideration of the foregoing Recitals and the mutual promises and covenants contained herein, Lender and the Loan Parties agree as follows:

1.     Agreement to Forbear.   During the period (the "Forbearance Period") commencing on the date of this Agreement and ending on the earlier to occur of July 15, 2005 or the date that any Forbearance Default (as defined below) occurs, Lender will forbear in the

EXHIBIT "D"

exercise of its rights and remedies under the Note and the Security Documents with respect to the Designated Default; provided, however, that if, prior to July 15, 2005, Borrower has paid to Lender the sum of $1,000,000.00 for application against accrued but unpaid interest on the Notes, the Forbearance Period will be extended for an additional ninety (90) days through and including the earlier to occur of October 15, 2005 or the date that any Forbearance Default occurs  For purposes of this paragraph 1, the term "Forbearance Default" means the occurrence of any Event of Default under the Note or the Security Documents other than the Designated Default.  The Loan Parties acknowledge that throughout the Forbearance Period and at all times thereafter, all principal, interest, fees, costs and expenses due under the Note shall remain due and payable and this Agreement does not constitute an extension of the maturity date of the Note.  The Loan Parties further agree that upon expiration of the Forbearance Period, Secured Party will be entitled to immediately exercise all rights and remedies available to Secured Party under the Note, the Security Documents and applicable law, including, without limitation, the right to foreclose the security interests granted by the Loan Parties to Secured Party under the Security Documents.

2.    Representations and Warranties.  The Loan Parties hereby represent and warrant to Lender, and agree with Lender, as follows:

(a)    Recitals.  The Recitals in this Agreement are true and correct in all respects

(b)    Powers; Authorization.  Each Loan Party has the requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder.  This Agreement has been duly executed and delivered by the Loan Parties.

(c)    Enforceability.  This Agreement is the legal, valid and binding obligation of the Loan Parties, enforceable against the Loan Parties in accordance with its terms.

3.    Covenants of Borrower.  Unless Lender otherwise consents in writing, Borrower agrees that during the Forbearance Period, it will:

(a)    Payment of Interest.  Pay to Lender, on or before July 15, 2005, the sum of $1,000,000.00 for application to accrued but unpaid interest due under the Note.

(b)    Preparation for Auction.  Permit an auctioneer designated by Lender to have access to all collateral described in the Security Documents in order to permit the auctioneer to prepare a sales brochure and related sales materials for the collateral to be used in connection with any disposition of the collateral pursuant to the Security Documents, with all expenses associated with the preparation of such sales brochures and materials to be borne by Borrower.

(c)    Increase in Interest Rate.  The interest rate applicable to the unpaid principal balance of the Note will be increased to thirty percent (30%) per annum effective retroactive to September 16, 2003 until the Note has been paid in full.

2

Case 9:09-bk-12311-RR    Doc 94    Filed 08/30/10    Entered 08/30/10 17:21:32    Desc
Case 9:09-bk-12311-RR    Doc 25-8    Filed 10/07/09    Entered 10/07/09 10:57:09    Desc
May 25 07 10:19a    On Der    d Tech    Main Document    Page 24 of 29
                                        Exhibit    Page 14 of 21    9194389C    p.3

4.    <u>Waivers by Loan Parties</u>. Pursuant to Section 9-624 of the Uniform Commercial Code (the "<u>UCC</u>"), the Loan Parties waive: (a) the right to notification of disposition of collateral under Section 9-611 of the UCC, (b) the right to require disposition of collateral under Section 9-620(e) of the UCC, and (c) the right to redeem collateral under Section 9-623 of the UCC.

5.    <u>Effect and Construction of Agreement</u>. Except as expressly provided herein, the Note and the Security Documents shall remain in full force and effect in accordance with their respective terms, and this Agreement shall not be construed to:

     (a)    impair the validity, perfection or priority of any lien or security interest securing the indebtedness of the Loan Parties to Lender;

     (b)    waive or impair any rights, powers or remedies of Lender under the Note and the Security Documents upon termination of the Forbearance Period, with respect to the Designated Default or otherwise;

     (c)    constitute an agreement by Lender or require Lender to extend the Forbearance Period, or grant additional forbearance periods, or extend the term or the time for payment of any of the indebtedness of Borrower to Lender; or

     (d)    make any additional advances or other extensions of credit to Borrower.

In the event of any inconsistency between the terms of this Agreement and the Note and the Security Documents, this Agreement shall govern. The Loan Parties acknowledge that they have consulted with counsel and with such other experts and advisors as they have deemed necessary in connection with the negotiation, execution and delivery of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement or any part hereof to be drafted.

6.    <u>Expenses</u>. The Loan Parties agree to pay all costs, fees and expenses of Lender (including the fees of Lender's counsel) incurred by Lender in connection with the negotiation, preparation, administration and enforcement of this Agreement.

7.    <u>Miscellaneous</u>.

     (a)    <u>Further Assurance</u>. The Loan Parties agree to execute such other and further documents and instruments as Lender may request to implement the provisions of this Agreement and to perfect and protect the liens and security interests created by the Security Documents.

     (b)    <u>Benefit of Agreement</u>. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto, their respective successors and assigns. No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement.

3

(c)    Integration. This Agreement, together with the Note and the Security Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Agreement, the Loan Parties acknowledge that they are relying on no statement, representation, warranty, covenant or agreement of any kind made by the Lender or any employee or agent of the Lender, except for the agreements of Lender set forth herein.

(d)    Severability. The provisions of this Agreement are intended to be severable. If any provisions of this Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.

(e)    Governing Law. This Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of Kansas, without regard to the choice of law principles of such state.

(f)    Counterparts; Telecopied Signatures. This Agreement may be executed in any number of counterparts and by different parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement. Any signature delivered by a party by facsimile transmission shall be deemed to be an original signature hereto.

(g)    Notices. Any notices with respect to this Agreement shall be given in the manner provided for in the Note and the Security Documents.

(h)    Survival. All representations, warranties, covenants, agreements, under-takings, waivers and releases of the Loan Parties contained herein shall survive the termination of the Forbearance Period and payment in full of all indebtedness, liabilities and obligations of Borrower to Lender.

(i)    Amendment. No amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the parties hereto.

8.    Release of Claims and Waiver. The Loan Parties hereby release, remise, acquit and forever discharge Lender and Lender's employees, agents, representatives, consultants, attorneys, fiduciaries, servants, officers, directors, partners, predecessors, successors and assigns, subsidiary corporations, parent corporations, and related corporate divisions (all of the foregoing hereinafter called the "Released Parties"), from any and all actions and causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, for or because of any matter or things done, omitted or suffered to be done by any of the Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or

4

Case 9:09-bk-12311-RR    Doc 94    Filed 08/30/10    Entered 08/30/10 17:21:32    Desc
Case 9:09-bk-12311-RR    Main Document 10/07/09    Page 26 of 29 10/07/09 10:57:09    Desc
May 25 07 10:20a        On Dem    d Tech  Exhibit    Page 16 of 21    9194383c        p.5

in any way connected to this Agreement, the other Note and the Security Documents (all of the foregoing hereinafter called the "Released Matters"). The Loan Parties acknowledge that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters. Each Loan Party represents and warrants to Lender that it has not purported to transfer, assign or otherwise convey any right, title or interest of said Loan Party in any Released Matter to any other person and that the foregoing constitutes a full and complete release of all Released Matters.

     9.    VENUE; JURISDICTION; JURY TRIAL WAIVER. LENDER AND THE LOAN PARTIES EACH HEREBY IRREVOCABLY:

     (I)    CONSENT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN JOHNSON OR WYANDOTTE COUNTY, KANSAS;

     (II)    AGREE THAT VENUE SHALL BE PROPER IN ANY COURT OF COMPETENT JURISDICTION LOCATED IN JOHNSON OR WYANDOTTE COUNTY, KANSAS; AND

     (III)    WAIVE THEIR RIGHT TO TRIAL BY JURY IN ANY CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE NOTE AND THE SECURITY DOCUMENTS.

### NOTICE TO BORROWERS

     THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS CONSTITUTE THE COMPLETE AND FINAL EXPRESSION OF THE "CREDIT AGREEMENT" (AS DEFINED IN K.S.A. § 16-117(A)) BETWEEN THE LOAN PARTIES AND LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR ORAL CREDIT AGREEMENT OR OF ANY CONTEMPORANEOUS ORAL CREDIT AGREEMENT BETWEEN THE LOAN PARTIES AND LENDER. THE LOAN PARTIES AGREE THAT ALL NON-STANDARD TERMS AND ALL PRIOR ORAL CREDIT AGREEMENTS AND CONTEMPORANEOUS ORAL CREDIT AGREEMENTS BETWEEN THE LOAN PARTIES AND LENDER ARE SUFFICIENTLY SET FORTH IN THE LOAN DOCUMENTS EXCEPT AS FOLLOWS (IF NONE, STATE "NONE" OR LEAVE BLANK): _____NONE_____."

Initials _____          Initials _____

Initials _____          Initials _____

### SIGNATURE PAGE FOLLOWS

DTMDOCS 1159599v2

5

Case 9:09-bk-12311-RR    Doc 25-6    Filed 10/07/09    Entered 10/07/09 10:57:09    Desc
Exhibit    Page 17 of 21

May 25 07 10:20a    On Der    d Tech    9194383C                    P.6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**BORROWER:**

HOLLYWOOD MOTION PICTURE AND
   TELEVISION MUSEUM

By: _____
Name (print): _____
Title: _____

**TRUST:**

HOLLYWOOD MOTION PICTURE TRUST

By: _____
Name (print): _____
Title: _____

**SELDEN:**

SELDEN ENTERPRISES LIMITED PARTNERSHIP

By: _____
Name (print): _____
Title: _____

**LENDER:**

_____
Gregory J. Orman

DTMDOCS 1159599v2

6

| In re: HOLLYWOOD MOTION PICTURE AND TELEVISION MUSEUM, a Non-Profit Corporation, | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER  9:09-bk-12311 [Jointly Administered with Case No. 9:10-bk-10865-RR] |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 7 West Figueroa Street, Second Floor, Santa Barbara, California 93101.

The foregoing document described _____ DECLARATION OF TODD FISHER IN SUPPORT OF DEBTORS' PLANS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On ____ August 30, 2010 _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____ August 30, 2010 _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____ August 30, 2010 _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Via Personal Delivery
The Honorable Robin Riblet
U.S. Bankruptcy Court
1415 State Street
Santa Barbara, CA  93101

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 30, 2010 | Cheryl Niccoli | *Cheryl Niccoli* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Hollywood Motion Picture and Television Museum
BK NO. ND 09-12311-RR
Jointly Administered with BK NO. 10-10865**


## SERVED ELECTRONICALLY

David Y. Farmer   cacie@farmerandready.com
Brian D. Fittipaldi   brian.fittipaldi@usdoj.gov
Jonathan G. Gura   jon@msmlaw.com
Brian T. Harvey   bharvey@buchalter.com, IFS_filing@buchalter.com
Mark Shaiken   mshaiken@stinson.com
Peter W. Lianides   plianides@winthropcouchot.com, pj@winthropcouchot.com
Randye B. Soref   rsoref@buchalter.com, IFS_filing@buchalter.com
Peter Susi   cheryl@msmlaw.com, peter@msmlaw.com
United States Trustee  ustpregion16.nd.ecf@usdoj.gov


## SERVED BY U.S. MAIL

Gregory J Orman
26733 W. 109th Street
Olathe, KS 66061-7499